The next case today is Dhananjay Patel et al. v. 7-Eleven, Inc. Appeal Number 20-1999. Attorney Liz Riordan, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. This is Shannon Liz Riordan. I represent the Plaintiff Appellants in this matter. I'd like to reserve five minutes of your time for rebuttal. Five minutes. Thank you. Your Honors, the District Court decision below is the first one to Plaintiff's knowledge that has ever accepted the argument that the franchise community has been making repeatedly over the years in a number of cases, in a wage case. That is the issue about whether or not franchisees who claim that they are actually employees under state law may be declared employees. Franchise companies such as the defendant here and the International Franchise Association have been sounding the alarm for years and have been rejected by the courts in their argument that some different or special rules should apply when you're addressing independent contractor misclassification in the franchise context. So far, we've had the Tenth Circuit, the Ninth Circuit, and the Third Circuit have all rejected this argument. The Connecticut Court of Appeals, we've cited the cases for you in our briefs. The Massachusetts Supreme Judicial Court, on three separate occasions, has evaluated cases in which franchisees claimed that they were employees under the Massachusetts Independent Contractor Law, and the SJC had no problem with that. In fact, in the Coverall versus Commissioner case from 2006, the SJC held that a franchisee was actually an employee for unemployment purposes. In the AWUA versus Coverall case, the SJC determined what damages a misclassified franchisee who was actually an employee could obtain under the Massachusetts Wage Act. And in the Depianti versus JanPro case, the SJC evaluated whether a franchisor who had intermediary master franchises between it and the franchisees could be liable as an employer under 148B. And in all of these cases, the argument was made, I think in most of them, by the defense counsel here, that you simply can't have franchises be considered to be employers and employees, and that that would conflict with the federal franchise rule and other arguments that were made below here. And that argument has been rejected. Counsel, the district court thought that the Monel decision from the highest court in the state was a bar to the use of Massachusetts state law on independent contractors. What's your response? Yes. So the Monel decision is not the applicable analysis here, and it was also the court wrongly applied it. So let me explain briefly why. So in Monel, you had two state statutes, and the SJC used statutory interpretation to address a direct conflict between two state statutes. One statute, the independent contractor law, the court concluded would dictate that the real estate agents were employees, whereas there was another statute that was more specific to the real estate industry, which said that real estate agents could be either employees or independent contractors. So the court held that there was a conflict there. Here, there is no such conflict. The franchise rule, as we have noted in our briefing, doesn't say anything about whether a franchisor is an employer or not, whether franchisees are employees or independent contractors. It's simply a disclosure rule. And we've cited- Ms. Liss-Ridden, that's, with all respect, overly simplistic. The franchise rule requires the franchisor to exercise very significant control over the franchisee, control which is completely incompatible with independent contractor status under the Massachusetts definition. There's no way that you can comply with both. I realize you make a backup argument in your brief to the contrary, but I've compared the factors that you cite as showing control in this situation with the factors that the franchise rule requires the franchisor to exercise, and there's very considerable overlap. So, Your Honor, what we're referring to in the franchise rule is simply a definitional requirement of what a franchisor is. The franchise rule itself has no substantive mandate with respect to the relationship between a franchisor and a franchisee. It's simply a disclosure rule. It says that these are the required disclosures that a franchisee must receive before entering such a relationship. Five minutes remaining. Five minutes. So, it's not disclosing that the franchisor is going to have significant control. But just to follow up with Judge Selye's question, I was curious as to whether your argument since it says significant control or provides significant assistance, I mean, is it your position that in any situation like this that in order to avoid the mass law that the franchisor will only be allowed to provide significant assistance? Well, that is, I mean, that is one way to reconcile them. But again, the point of this is simply that... What do we do with that control piece? That's what we're trying to figure out. Because it is in the disjunctive. It's control or assistance. Yes. Okay. So, let's just say that there is control and that there is control that would be significant control under prong A. And then the franchise rule, if there is that control also, that means that certain disclosures need to be made. That's all. It doesn't say anything about what the relationship is and whether or not the franchisor needs to comply with state wage requirements. This has authority to exert a significant degree of control over the franchisee's method of operation. It's a lot more specific as to what kind of control is being exerted. Yes. All I'm saying is, let's just say there is control under both prong A and the franchise rule. They're not necessarily the exact same level of control, but let's just say there is control under both. It simply means under the franchise rule that the franchisor has to provide certain disclosures. It doesn't say anything about whether the franchisor needs to comply with state wage requirements. They may have to do both. In fact, the SJC has noticed, has not directly addressed the question, but it has implicitly noted that you could be a franchisor and an employer. The Ninth Circuit in the most recent Vasquez versus Janpro case also similarly held that you can still apply the ABC test to determine whether or not someone is an employee, even if they're also a franchisee. I would suggest that if this court has any concern about whether or not the district court here was right, which would upend three prior SJC decisions, that the court should certify this at least to the SJC and ask the SJC to decide since this is a critical piece of Massachusetts law. The concern here, of course, goes way beyond this case because if this court were to hold I'm sorry. I'm not sure whether it was in our briefs the court could decide sui sponte to do it, so I'm suggesting that. But the question was whether you made that request in the district court. I don't remember. I'd have to go back and check our briefs to see. But I don't remember saying it. So my point is, and this court also has certified and lower courts have certified even when it wasn't requested by a party. My point is that if the court has any concern about that, the SJC obviously is the ultimate decision maker on Massachusetts law and such a major ruling would have to go to the SJC. But also my point here is that this is a legislative decision. The Massachusetts legislature has expressly rejected a carve out from the independent contractor law for franchises. And also another point is that if you look at other SJC decisions such as the Sebago case, the SJC said you apply 148B. You apply the three factors. In the Sebago case, the SJC applied the ABC test and determined that the defendants met it. So here the question is just simply whether the ABC test applies at all. I would say it does apply and that the plaintiffs win. But at the very least here, there should be a question as to whether or not what the ABC factors would show. In the same case essentially that we're litigating also in California, California has expressly adopted the Massachusetts ABC test by its Supreme Court a couple of years ago in the DynaMats decision expressly adopted it. In the same case essentially that we brought against 7-11 in California, it went up to the 9th Circuit and the 9th Circuit under the ABC test reversed summary judgment or actually in order of dismissing the claims remanded to the district court. The district court then took briefing on summary judgment under the ABC test and denied summary judgment to both sides and said there's a fact issue about whether or not the franchises are employees and we actually had a trial this spring in federal court in California about which way the ABC test would come out. So at the very least... That's time. Counsel, I have a question that relates to certification which is an interesting suggestion. If the panel were to certify the issue, wouldn't the Supreme Judicial Court of the Commonwealth have to construe a federal rule or a federal statute? Well really it's being asked to decide an important question about a state statute, the independent contractor law. So that's really the issue that would be before it. I mean construing a federal statute, I don't know whether your question is that whether this court should make some construal decisions about the franchise rule. I'm not quite sure what your question is on that, but I would say this is a significant state law question. Let me clarify a bit. As I understand, Monel, it says that comparing the independent contractor rules in Massachusetts with the more specific requirements of real estate brokerage, the specific statute governs over the general. Now I'm generalizing there, but it required the court to analyze the two statutes because the contention was made that there was some kind of conflict. So if we were to certify, if the panel were to certify this question, wouldn't the Massachusetts court have to construe the franchise rule? I guess it depends on what you mean by construe. They would have to determine if there were a conflict, I suppose, between the Massachusetts statute and the franchise rule. And I'm just saying, again, whatever the franchise rule says about control, even if it's determined that there is control under the franchise rule, franchise rule doesn't preclude a franchisee from being an employee under state. You can be a franchisor and under AWUA versus coverall only take your revenues from the customers, not take any money from the franchisees or require the franchisees to pay fees to the franchisor. That is what AWUA does not allow. So you could still be a franchisee and be an employee under the ABC test. And I believe that that's made clear by the SJC and AWUA. And if the court has any questions about that, that can be certified to the SJC. The bigger point I wanted to make here is if the court were to affirm the district court below and say that franchising is somehow an exception to the district Massachusetts independent contractor law, the result is clear. Every employer in the Commonwealth that's going to try to misclassify its workers is just going to slack the franchise label on that relationship. We're already seeing that happen in a number of industries and say, oh, they're franchisees. Therefore, they can't be employees. And that would allow an end run around the wage law and the independent contractor statute, which the SJC has repeatedly said you can't do. Thank you, counselor. At this time, would attorney Liz Reardon please mute her audio and video and attorney Leon, please reintroduce yourself again. Good morning again, your honors. Norman Leon for the defendant Appellee 711. I want to try to frame up this issue, but I want to briefly respond to counsel's assertion that people are simply going to slap a franchise label on their business model to avoid the wage laws. There's no evidence of that in the record at all. And a franchise is not a label that you slap on a relationship. The relationship of franchisor franchises specifically defined federal government, the cost of becoming a franchisor and complying with the disclosure requirements that that entails are enormous and they occur every year. There are additionally control requirements, drug cilia, as you know, that the franchisors have. They need to be out there constantly overseeing their franchisors, franchisees distribution of services and products under their marks to ensure that they comply with the FTC rule and that they comply with the law. So I just wanted to address that quickly. But I want to take a minute if I could, your honors, to see if I could frame this issue properly, because I think Attorney List Reardon has missed the point a little bit. FTC rule, as we've noted, defines a franchise as a commercial relationship in which a franchisor exerts or has the authority to exert a significant amount of control over its franchisees operations. The rule includes significant control as one of the three elements of the legal definition of what a franchise is, because control is an essential element of all franchise businesses. Franchisors have to exercise control over the quality and consistency of the goods and services their franchisees sell. Because if they don't, the brand value that franchisors sell, that franchises purchase and that consumers rely on would cease to exist. Those facts, your honors, are undisputed on this summary judgment record. And I would cite... So, Mr. Leon, what do you say to counsel's argument that, oh well, that's merely a disclosure obligation, and as long as the degree of control or diminution in control is disclosed, there aren't any other consequences under federal law? That's incorrect, your honor, for a couple of reasons. I wasn't suggesting it was correct. I'm suggesting that that's misread his argument. The FTC rule is not merely a disclosure regime. It is a full regulatory encapsulment, I'm not even sure that's a word, I apologize if it's not, of how the franchisor-franchisee relationship works. And the fact that franchisors need... Is there a consequence beyond disclosure? I'm sorry, your honor, of what? Is there a federal consequence beyond disclosure? There can be a penalty for non-disclosure. Is there a penalty beyond that? Well, the penalty here in Massachusetts, at least, is that you can't operate as a correctly, you're saying, is there a penalty for not making the disclosures required by the FTC rule? No, that's not what I'm asking. What I'm asking is, you can be penalized for not disclosing, but once the business relationship is set up, if it doesn't operate as disclosed, is there a federal penalty for that? Yes, your honor, it would be an unfair and deceptive trade practice under the FTC rule. So, you're saying that if the franchisor does not exert substantial control, that there's a penalty for that? If you submit the disclosure document required by the FTC rule, and you delineate the control that you're required to exercise under the franchise agreement and by law, and you do not do that, your disclosure document would be false and deceptive. Not only would it impact the value of the investment, because franchisees make the investments in part relying upon the fact that franchisors are going to control what other franchisees do. Bad experiences by customers at a single franchise location redound to the entire system. So, an element of what franchisees purchase is that franchisors are going to make sure that other franchisees are doing the right thing. If that doesn't happen, if a franchisor represents that they're going to do that and they don't, that would be an unfair and deceptive practice and a misleading representation that would subject a franchisor to liability. So, you're saying the FTC polices the amount of control actually exerted? I'm saying that the FTC, Your Honor, polices whether or not franchisors have distributed false and misleading disclosure statements. That is one of their functions under Section 5 of the Act. So, to the extent that it can be control or substantial assistance, it suggests to me that you don't have to set up an actual business relationship that actually exerts substantial control. There is no way as a matter of law or as a matter of practice to establish a franchise system that does not exercise control. So, why is it in the disjunctive? Because significant assistance is also effectively a form of control. One of the forms of significant assistance that the statute lists is providing an extensive operations manual, as Judge Gorton noted below, and that operations manual, which was provided to the plaintiffs in this case, is the centerpiece of most of the allegations. If control equated to assistance, it would say substantial control, such as providing substantial assistance. It doesn't say that. It's in the disjunctive. I understand, Your Honor, and even if there was a material difference between the two, the statute has been established to allow franchisors to exercise significant control over their franchisees. Counsel? Yes, Your Honor. Sorry for interrupting. Has any court anywhere said that the franchise rule preempts state law on who's an employee and who is not? I know that counsel took a different position with you, Your Honor, but no court has actually addressed that issue. And all of the decisions that counsel cited, other than the Vasquez decision from the Ninth Circuit, were decided before Monell, and of course, Monell did not apply in the Ninth Circuit. While some of these courts have applied the ABC test to franchises, none have addressed the conflict between the regulatory regime that governs franchising and the ABC test, and that includes the Vasquez court. I'll point out that aside from stating, incorrectly I respectfully believe, that the California Supreme Court's discussion of franchising in Patterson v. Dominos was dicta, Vasquez merely stated that the franchise context did not alter the ABC analysis because the concerns about franchising would apply as much in Massachusetts, where courts had applied the ABC test to franchise businesses. But none of the cases in Massachusetts had actually addressed the issue. They simply applied the test. Excuse me. To affirm, would we have to conclude, as a matter of law, that the franchise rule preempts the Massachusetts ICL law? I don't believe that the court needs to conduct a preemption analysis. I think the court can come to the conclusion just the way Judge Gorton did, by applying ICL does not apply in cases such as this, where a specific statute that sets up a legal business relationship precludes satisfaction of the ABC test. What's your position on certification? It was never asked for in the court below. That's not what I'm asking. I understand. Clearly, this panel has the authority to do that. I'm asking, what's your position on whether the panel, if it were so inclined, to certify this issue to the highest court in the Commonwealth? We would not oppose it, but we don't believe it's necessary under the circumstances. Thank you. Mr. Leon, can I get you on to a different topic? I looked at your original motion for summary judgment, and you had raised an alternative ground for summary judgment on the ground that the franchisees cannot be employees and the ABC test cannot apply because they do not provide services to the franchisor, but rather the franchisor provides services to them. Now, I understand that Judge Gorton chose not to decide on that ground, but we, of course, can form on any alternative ground that manifests in the record. Do you still press that argument? Yes, Your Honor. We do press that argument, and we think, again, the undisputed facts on this record support it for a simple reason. Pursuant to this regulatory regime, the plaintiffs in this case were granted a license to operate a business. If I could just tie up one quick point before I continue on that, the FTC rule, by the way, does define a franchise relationship as a commercial relationship, and it does define a franchise as a business. That's part of the definition of what a franchise is. It makes clear this is not an employment relationship. But by doing that, they bought the opportunity to own and operate this franchise and control the revenue stream. They did not buy an opportunity to get a job and provide services to 7-Eleven for which  That's not the way this relationship is structured. The only services that flow from one party to another in this case are the services that 7-Eleven provides to the franchisees. The support, the assistance, the advice, the marketing, all of those services are provided by 7-Eleven. The only services, if they could even be characterized as such, that the plaintiffs provide are operating their own business and reaping the benefits of the income that they generate from that business. That's not a service that's provided to 7-Eleven. They pay a fee for that, just as every franchisee does. But the benefits of that service inure directly to them. That does not come to 7-Eleven. So that's why I think that alternative ground for affirmance does hold true. About four minutes left. Thank you. I wanted to clarify one other issue, if I could, on how Massachusetts had approached this. And I think, by the way, that Monell and Sebago all stand for the same proposition that if you have one statute, or in the case of Sebago, a ordinance that precludes satisfaction of the ICL test, the ICL test is not going to apply. Counsel has said that the SJC has taken a different position here and that basically why control is exercised doesn't matter, but that's just wrong. And I think the De Pianti opinion is right on point, and this points out one of the additional grounds that Judge Gordon pointed out in his opinion. It's not just the FTC rule that we're talking about here that imposes control. It's the Lanham Act. Every franchise has as a component of the relationship the licensing of a trademark. With that comes obligations. And I know there's been federal law on that, but since we're talking about a Massachusetts state statute, let's see what the Massachusetts SJC had to say about this. This is from De Pianti, and this is from page 615, 465 Mass 615. Under federal law, a franchisor is required to maintain control and supervision over a franchisee's use of its mark or else the franchisor will be deemed to have abandoned its mark under the abandonment provisions of the Lanham Act. Broadly extending the right to control test for vicarious liability to the franchisor-franchisee relationship where franchisors are obligated to maintain certain controls could have the undesirable effect of penalizing franchisors for complying with federal law. That's exactly what we're talking about here. And contrary to Plaintiff's Counsel's representation, not one court has addressed the specific question that Judge Gordon addressed here. Not the 10th Circuit, not the 3rd Circuit, not the 9th Circuit. Control is a required element. It conflicts directly with prong A of the ABC test. Under Monell, that means that the ABC test yields. Here we have the additional onlay of not just civil penalties being imposed because you've complied with federal law, but criminal penalties. What do you think control over the mark means in this case? I think it means exactly how Judge Hawkins described it in the International Franchise Association case. That you need to go out and you need to make sure that franchisees are producing products or distributing services in accordance with your quality standards. And of course, that's the exact purpose of the lat amount. But what does that mean here, factually? What does that mean here for 7-Eleven? It means factually that 7-Eleven needs... I mean, does that mean that you're open 24-7? Does it mean that you are displaying the logo? What does it mean factually beyond open 24-7 and displaying the logo? And there are certainly some standards, Your Honor, that a franchisor will impose to protect its brand. What does it mean here? Here it means that the store has the image of a 7-Eleven store, that it carries the products associated with the 7-Eleven store, that those products that are distributed by the franchisee are of a quality and consistency and cleanliness that is associated with the 7-Eleven mark. That's the best way that I can describe it. All right. So we're talking about the look of the store, the 24-7, slushies, what else? Food products are distributed at 7-Eleven stores, Your Honor. They have a certain taste. There is an expectation when a consumer walks into a McDonald's, for example, that the french fries and the hamburgers are all going to taste the same. 7-Eleven needs to take steps to assure the public that the products, the food products, the drinks that are distributed from 7-Eleven stores are of a uniform quality and consistency. That's what the Act requires. That's how the business model works. That's time. Thank you, Your Honors, unless the Court has any additional questions. I appreciate the Court's time. Thank you. Thank you, Counsel. At this time, would Attorney Liss-Riordan please unmute her device and Attorney Leon, please mute your device and please reintroduce yourself on the record to begin. Thank you, Your Honors. This is Shannon Liss-Riordan again. A few very pertinent points to what was just talked about. First of all, Judge Selya, you've raised this question about the alternative grounds of whether who provides services to whom. I would ask if you look at the Sebago decision where the cab companies made the exact same that they provided services to the drivers rather than the drivers providing services to the companies. The SJC rejected that argument, said that the drivers provide services to the cab companies and thus went on to apply the ABC tax. Another point that I want to make is under the franchise rule, Judge Thompson, there's no requirement that franchisors exercise that control under the franchise rule. If they don't exercise the control, it simply means that they're not subject to the franchise rule. In fact, there are franchises who end up not being subject to the franchise rule because they haven't exercised enough control. And in fact, the Lanham Act is the same issue. If they don't exercise the control, they might just lose the mark. There's no FTC running around enforcing, making sure that these franchises exert enough control. In fact, 7-Eleven's argument to you is really quite ironic because that trial that Mr. Leon and I just completed this spring in California that I described to you about, about the question about whether 7-Eleven franchisees under the ABC, actually, I'm sorry, it was remanded under the ABC test for various reasons. The trial itself was under a multi-factor prior Borrello test. But it's ironic that 7-Eleven's whole argument in the trial was trying to convince the judge that it didn't really exert much control over the franchisees. We had a whole week-long trial in which it tried to explain there wasn't really that much control. So it's ironic now that 7-Eleven is arguing that it is required by law to exert control. And again, this just goes to show why there are fact questions, if anything, under the ABC test. There's no reason that the ABC test wouldn't apply here. The exact argument that Mr. Leon is making to you, he made as an amicus to the Ninth Circuit Borrello case. And although the Ninth Circuit didn't discuss it that explicitly, those arguments were presented to it. And the Ninth Circuit rejected the arguments because it very strongly held that the ABC test would apply to a franchise relationship. And that case then was remanded for the district court to apply the ABC test to the question of whether the franchisees there are employees or not. On the issue also that I raised at the end, that if you open up this door to allow franchising to be an exemption to the independent contractor law, that's going to open a horrific Pandora's box against the will of the Massachusetts legislature. And we already are seeing various industries where employers who are trying to get away with misclassifying their employees as independent contractors are already trying to claim that they are franchises. So that the independent contractor law doesn't apply. We're seeing this in trucking, the trucking industry. There is a lot of litigation in California involving Super Shuttle that was claiming that its drivers are actually franchisees. So are you suggesting, counsel, that courts are unable to distinguish between true franchise agreements and faux franchise agreements? Well, because, I mean, it's really unclear. It seems to me that the distinctions between a case like Sobago and a case like 7-Eleven, for example, are pretty obvious. Well, but then look at the cleaning franchise cases where court after court, the SJC three different times, the 10th Circuit in Acosta versus Janneke. The cleaning franchise, again, that to me, I have a lot of difficulty seeing that as what I would call a true franchise. I understand that it's attempted to be structured as a franchise. Right. But if you look at the facts of this case, the facts are actually really similar to the cleaning franchise cases all around. Because 7-Eleven owns the stores. Yes, 7-Eleven owns the, it has the license. It has the license, but it doesn't own the stores. Well, it does. I mean, it really it does. It doesn't. I understand that are all leased. By 7-Eleven. 7-Eleven leases the real estate. The franchisees don't lease it. I mean, the franchisees are effectively working as managers for 7-Eleven.  About 10% of its stores are corporate stores, and they are managed by acknowledged employee managers. The franchisees are doing the same job as those employee managers. Day by day, they're following 7-Eleven's rules, strict rules about how to run the stores. They have to wear uniforms. We put it on in our trial in California, all the ways that 7-Eleven is controlling them. It was a fact issue though. What about the cost structure between the stores that are directly managed and those that are operated by franchisees? Well, so, I mean, it all works the same. Customer payments, revenues to the stores, all go into a bank account controlled by 7-Eleven. The franchisees aren't really running their own business because they're doing the same thing. They're putting the customer's payments into a 7-Eleven controlled bank account. 7-Eleven gives them permission to take money out as draws for their pay, just the way 7-Eleven gives paychecks to its managers in the corporate-owned stores. I mean, it's really the same. The difference is that the employee managers in the corporate-owned stores don't have to pay thousands of dollars to buy their job. That's what the SJC said in Aurora versus Coverall was illegal about that arrangement. The cleaning franchisees were being required to pay thousands of dollars to buy their job, and that's what we can't do under the Massachusetts Wage Act. Again, what 7-Eleven could do, even as a franchisor, is it could, like it does, share the revenue from the customers, and like the SJC suggested in Aurora would be permissible, is that the employer franchisor can take some of the revenue and decide how much gets paid to the employees, but what it can't do under the Massachusetts Wage Act is take money from the employees. It can't take deductions from their wages. It can't charge them for expenses. It can't make them buy their job. So it could structure itself as a franchise and just not do these things that would violate the Massachusetts Wage Law. There's no reason to displace the protections of the Massachusetts Wage Law simply because it calls itself a franchisor, and again, if this court allows that to happen, that will be a path for an end run around the Massachusetts Independent Contractor Law, and the Ninth Circuit said no to that also, that the ABC test applies, and this should not be allowed to be a path for employers to evade wage obligations. That's the path this court would be set on if it allows 7-Eleven to, that test applies, there is no conflict, if the court has any questions about any of this, it should certify to the SJC, which has already spoken implicitly on this multiple times. Ms. Lisrud, your time is up, but it looks like Judge Hawkins might have a question for you. No. No? Okay. Thank you. Okay. Thank you, Your Honors. That concludes argument in this case. Attorney Lisrud and Attorney Leon, you should disconnect from the hearing at this time.